No. 38,288

JOHN W. LESSLEY, *Appellant,* v. THE KANSAS POWER & LIGHT COMPANY, a Corporation, *Appellee.*

(231 P. 2d 239)

Opinion filed May 12, 1951.

*Ward D. Martin,* of Topeka, argued the cause, and *E. H. Hatcher, Harold E. Jones, A. Harry Crane* and *Harry Snyder, Jr.,* all of Topeka, were with him on the briefs for the appellant.

*Clayton E. Kline* and *Ralph W. Oman,* both of Topeka, argued the cause, and *M. F. Cosgrove, Balfour S. Jeffrey, Robert E. Russell, Philip E. Buzick, Willard N. Van Slyck, Jr., Robert Stone, James A. McClure, Robert L. Webb* and *Robert A. McClure,* all of Topeka, were with him on the briefs for the appellee.

*Roy N. McCue* and *Howard F. McCue,* both of Topeka, for Ann Sheahan and Julia A. Dahlene, as *amici curiae.*

The opinion of the court was delivered by

PARKER, J.: This was a common law action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant. The plaintiff appeals from the trial court's action in sustaining the defendant's motion for judgment on the pleadings.

The pleadings consist of an amended petition, an answer, and a reply. When, as here, such pleadings are tested by a defendant's motion for judgment consideration is limited to well pleaded allegations of the petition and reply, which must be accepted as true, supplemented by any allegations of the answer admitted by the reply (*Simmons v. Gill,* 161 Kan. 123, 166 P. 2d 574; *Northington v. Northington,* 158 Kan. 641, 149 P. 2d 622, and cases cited at page 643 of the opinion), and the motion should not be sustained unless, upon the facts as conceded, it clearly appears the party challenging the pleadings is entitled to judgment (*Schlemeyer v. Mellencamp,* 159 Kan. 544, 156 P. 2d 879; *Smith v. City of Emporia,* 168 Kan. 187, 211 P. 2d 101).

From what has just been stated it becomes apparent that in determining whether a motion of the character here in question should be sustained a court is not concerned with conclusions of the plaintiff as to the force and effect to be given the facts pleaded in his petition and reply or with disputed questions of fact raised by the defendant's answer and that allegations pertaining to such matters have no place in a statement outlining the factual picture on which it bases its decision. The instant case is no exception. Consequently we have examined the pleadings and, without attempting to detail their contents or expand specific averments relied on in support of certain arguments advanced by the parties, shall first relate such of the well pleaded and, for purposes of the ruling on the motion, admitted facts as are essential to a proper understanding of the general factual situation. They can be summarized as follows:

On or about March 1, 1947, the defendant, The Kansas Power &

Light Company, was, and for a long time prior thereto had been, a corporation organized for profit under the laws of the State of Kansas. It was authorized to do business as a public utility and was engaged in the production, sale, and transmission of electric power, alleged by plaintiff to be its regular trade and business, with its office and principal place of business in the city of Topeka. Under and by virtue of the articles of incorporation issued it by the State of Kansas it was authorized, among numerous other things not here material, to engage in various other lines of business and in addition to do all things necessary for the conduct of a general electric, artificial or natural gas, light, heat, power, water, ice, street railway and stage or bus line business, also to build, construct, purchase, own and operate power plants, power houses, dams, works, transmission and distribution lines and systems, mains and services, with all necessary equipment for carrying on such operations. In the transaction of its business it was operating under the Workmen's Compensation Law of Kansas, having filed an election to come under the provisions of such law as a public utility.

In March, 1947, defendant owned and operated a large electric generating station at Tecumseh in which were installed four turbines consisting of two 6,000 KW units, one 15,000 KW unit and one 25,000 KW unit, together with boilers and other necessary equipment. On March 4, 1947, due to the necessity for increased capacity, defendant entered into a contract with the Missouri Valley Constructors, Inc., and Winston Brothers Company for the installation of an additional 30,000 KW unit, to cost approximately $5,000,000.00, immediately adjacent to and to the west of its then existing plant. The work of installing this unit consisted of the necessary building addition, substructure, foundation, circulating water tunneling, extensions, equipment, supports, entrance and access structures and the other structures and appurtenances required or incidental to the housing and support of the 30,000 KW turbo-generator, together with the steam boiler and other auxiliary equipment incidental or appurtenant thereto and also the installation of such turbo-generator, together with the steam boiler and other auxiliary equipment. It should be noted that this contract was set forth in the answer and that all parties concede its terms and conditions are a part of the pleadings and entitled to consideration in determining the propriety of the trial court's action in sustaining the motion for judgment.

At the time defendant entered into the contract just mentioned, and at all times pertinent to the issues involved, it did not have in its regular employ persons skilled and experienced and regularly engaged in the construction of large buildings and the installation of large and heavy equipment therein. Nor did it have shovel cranes, concrete mixers, concrete bins, concrete towers, hoists, guy derricks, and other equipment necessary and required for the large construction project contemplated by the terms of the contract.

On the 28th day of January, 1948, the two principal contractors, heretofore mentioned, subcontracted to Daugherty Company, Inc., the portion of the work consisting generally of all power piping in connection with the installation of the new turbo-generator with surface condenser and auxiliaries and a new 30,000 pound per hour steam generator and auxiliaries.

Plaintiff was a welder by trade and on the 9th day of December, 1948, he was an employee of Daugherty Company, Inc., working at his trade as a welder and cutting pipe to be installed in the new installation. He was working in what is called the pipe shop located in the original building of the defendant. Two hundred other employees were working on the new addition heretofore described. At approximately 3:20 p. m. of that day an explosion occurred in the pipe shop in the Tecumseh power plant in which plaintiff was working, which was under the exclusive and complete control of the defendant. The explosion broke, smashed, and tore into rubble the reinforced concrete floor of the pipe shop. It smashed and destroyed the floor upon which plaintiff was standing and knocked down brick walls in the room in which he was working. Immediately after the first explosion a second violent explosion occurred in the plant which filled the room in which plaintiff had been working with burning gas and vapor, flying dust, concrete, brick and debris.

At the time of the explosion defendant was the producer of electric power through the use of steam boilers, turbines, generators and other equipment. The boilers used and operated by the defendant were fired with gas, oil, and coal to produce the electric power. Such explosions were of gaseous fumes and vapors, the exact contents of which were unknown, and they, the fire following thereafter, and the injuries received by plaintiff, were the result of defendant's carelessness and negligence in the operation and main-

tenance of its power plant at a time when such plant, together with all materials used in the producing of electricity, and the pipes, conduits and means of transmission electric current as well as the pipe shop floor and the cavities thereunder were solely and exclusively under the control, care, and operation of the defendant.

As a result of the explosions and subsequent fire plaintiff was severely injured during the course of his employment as an employee of Daugherty Company, Inc., and thereby sustained damages as claimed by him in his petition.

With facts before it of the character outlined the trial court, after overruling certain intermediate motions plaintiff had directed against the answer, sustained defendant's motion for judgment on the pleadings and in so doing held (1) that under the facts as disclosed by all of the pleadings, the plaintiff and defendant were subject to the Workmen's Compensation Act of the State of Kansas, and the sole and exclusive remedy of plaintiff is that provided by such Act and (2) that the petition failed to allege facts sufficient to state a cause of action against defendant under the doctrine of *res ipsa loquitur.* It then entered judgment in favor of defendant and against plaintiff for the cost of the action. Thereupon the plaintiff perfected this appeal.

Summarized appellant's contentions on appellate review are: First, that the trial court should have stricken certain allegations from appellee's answer and required others to be made more definite and certain; second, that under the facts conceded by the motion for judgment on the pleadings appellant and appelle were not subject to the Workmen's Compensation Act of the State and therefore the trial court erred in holding appellant's sole and exclusive remedy against appellee for the injuries sustained by him as a result of the explosions at the Tecumseh plant was limited to the relief provided for under the terms of such act; third, that the petition states a cause of action for injury under the doctrine of *res ipsa loquitur.*

Since they are first in order and in a sense preliminary to disposition of the main issue we shall give our attention to claims advanced by appellant regarding rulings on his motions to the answer. The rule in this state with respect to appellate review of rulings on such motions is well established and can be found in *Nelson v. Schippel,* 143 Kan. 546, 56 P. 2d 469, which holds:

"Motions to strike, to make definite and certain, and to separately state and number, rest in the sound discretion of the trial court, and from rulings

thereon an appeal does not ordinarily lie. Unless it appears the ruling prejudiced or will prejudice the substantial right of a party it will not be reversed. Unless it appears the ruling affects a substantial right and in effect determines the action it is not appealable." (Syl ¶ 1).

For later decisions to the same effect see *Howell v. Flora*, 155 Kan. 640, 127 P. 2d 721; *Gibson v. Bodley*, 156 Kan. 338, 133 P. 2d 112; *Estes v. Tobin Construction Co.*, 159 Kan. 322, 153 P. 2d 939; *Giltner v. Stephens*, 163 Kan. 37, 180 P. 2d 288.

Appellant complains because allegations included in the answer to the effect (a) the construction of the power plant was a part of appellee's trade and business, (b) all of the employees working on the project were appellee's employees, (c) appellee and appellant were operating under the Workmen's Compensation Act, and (d) appellee had received compensation from Daugherty Company, Inc., were not stricken from the answer when motioned. We note these allegations were not admitted by the reply and hence entitled to no consideration in ruling on the motion for judgment. Next it is argued allegations in the answer respecting the extent of appellee's corporate powers under the charter granted it by the state should have been stricken. One of appellee's defenses was that in constructing the plant it was engaging in its trade and business. Under such circumstances we are inclined to the view it was proper to plead it had authority to do so. Finally it is claimed an allegation that appellee "entered upon the installation" of the power plant was a confusing conclusion affecting the main issue and should have been made definite and certain. Without laboring this last claim it suffices to say we have examined the paragraph of the answer in which the allegation appears and are convinced it lacks merit. Summing up, we have concluded the record fails to disclose that appellant's substantial rights were prejudiced by any of the rulings made by the trial court on the motion to strike or make more definite and certain. It follows such rulings are not appealable and even if they were they would not warrant a reversal of the judgment.

Before giving direct consideration to appellant's second contention, which our research has convinced us raises the most important and decisive appellate issue involved, it will simplify this opinion to point out at the outset certain legal questions essential to its decision which are not in controversy because they are either so well established as to preclude dispute or have been conceded by express admission of the parties.

In this jurisdiction it is well settled that if a workman can recover compensation under the workmen's compensation act (G. S. 1935, Ch. 44, Art. 5) for an injury the remedy is exclusive and he cannot maintain a common law action for damages founded on negligence against a party from whom he could have recovered compensation under the act. (*Crawford v. Atchison, Topeka & S. F. Rly Co.* 166 Kan. 163, 165, 199 P. 2d 796; *Duncan v. Perry Packing Co.*, 162 Kan. 79, 174 P. 2d 78; *Hoffman v. Cudahy Packing Co.*, 161 Kan. 345, 167 P. 2d 613; *Bailey v. Mosby Hotel Co.*, 160 Kan. 258, 259, 160 P. 2d 701; *Jennings v. Kansas Power & Light Co.*, 152 Kan. 469, 105 P. 2d 882; *Echord v. Rush*, 124 Kan. 521, 261 Pac. 820).

It is conceded by appellant that appellee, pursuant to G. S. 1935, 44-505, had filed an election to come within the provisions of the compensation act as a public utility and was subject thereto on the date he sustained his injuries if under other provisions of the act he and the appellee came within the scope of its terms and conditions.

The parties agree the provision of the act decisive of the question whether, under the pleaded facts, appellant and appellee are subject to the workmen's compensation act is G. S. 1935, 44-503, which reads:

"(a) Where any person (in this section referred to as principal) undertakes to execute any work which is a part of his trade or business or which he has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then in the application of this act, reference to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed. . . . (d) This section shall not apply to any case where the accident occurred elsewhere than on, in or about the premises on which the principal has undertaken to execute work or which are otherwise under his control or management, or on, in or about the execution of such work under his control or management. . . ."

It will be noted that provisions of the section of the statute just quoted provide in substance that where a principal contracts with another person to do work which is part of the principal's trade or business he shall be liable to pay compensation to any injured workman employed in pursuance of a contract to the same extent as

though such workman had been immediately employed by him. In construing such statute we have held, so repeatedly that there can no longer be any question regarding the rule, that a principal is liable for injury sustained by workmen of an independent contractor when the accident arises out of and in the course of the principal's trade or business. Indeed we have said the very purpose of such section is to give the employees of such contractor a remedy against the principal and to give its provisions any other construction would simply mean an employer subject to the compensation act could escape liability for injuries received by persons in carrying on his trade or business by the simple expedient of hiring an independent contractor to do the work and letting him employ and direct the workmen. (See *Purkable v. Greenland Oil Co.*, 122 Kan. 720, 722, 253 Pac. 219; *Lehman v. Grace Oil Co.*, 151 Kan. 145, 98 P. 2d 430; *Hoffman v. Cudahy Packing Co.*, supra, also *Bailey v. Mosby Hotel Co.*, supra, at page 261 of the opinion.) It is, of course, elementary that the statute is equally applicable to employees of subcontractors (*Spencer v. Marshall*, 107 Kan. 264, 191 Pac. 468). Appellant recognizes this rule and admits that the principal cannot be held liable under the common law for the negligent injury of an employee of an independent contractor where the work being performed under the contract is part of the trade or business of the principal. However, in fairness, it should be here noted he insists the principal is not relieved from liability under the common law simply by reason of the fact the work of such a contractor may be required to equip the principal's trade or business for operation.

Turning now to appellant's second contention we omit all reference to what is referred to in his briefs as disputed factual issues and start on the premise, as he expressly alleges in his amended petition or if not concedes by pertinent terms of the contract which he does not deny, that on the date he received the injuries in question and at the time and place therein stated, while working on premises under appellee's exclusive control, he was employed by an independent subcontractor having a separate contract with independent contractors who had a general contract with appellee, at all times authorized and licensed as a public utility engaged in the production, sale, and transmission of electric power, for new construction at its Tecumseh power plant which included the erection of a new building in addition to those already on the premises and the installation of steam boilers, turbines, generators and other equipment

necessary and essential to the production, transmission, and sale of electricity.

Long ago in two decisions which we regard as lodestars in the history of workmen's compensation jurisprudence in this jurisdiction we had occasion under conditions and circumstances somewhat similar to those here involved, except for the magnitude of the contract, to give consideration to and pass upon the force and effect to be given provisions of the instant statute which, so far as the subdivisions pertinent to the appellate issues are concerned, were the same then as they are now. The first of these decisions is *Purkable v. Greenland Oil Co.*, 122 Kan. 720, 253 Pac. 219, the second is *Williams v. Cities Service Gas Co.*, 139 Kan. 166, 30 P. 2d 97.

In the Purkable case the plaintiffs who were dependents of a deceased workman who was killed while at work as the employee of an independent contractor did not seek to hold the decedent's immediate employer but for some undisclosed reason commenced a compensation proceeding against the company with whom such employer had contracted. In that case we held:

"An oil company engaged in developing mineral resources of leased land and producing oil therefrom, let to an independent contractor a contract to erect a derrick on the land, as an incident to the drilling of an oil well by the company. While the derrick was under construction one of the contractor's workmen fell from it and received injuries which resulted in death. The workman's dependents sued the company for compensation. *Held*, the work of building the derrick was part of the company's business, within the meaning of the subcontracting section of the workmen's compensation act (R. S. 44-503); the accident occured on premises on which the company had undertaken to execute work, within the meaning of subdivision (*d*) of the section; and the company was liable to the dependents for compensation, under subdivision (*a*) of the section." (Syl.)

And in the opinion said:

"The company contends Hedges was an independent contractor, and because Purkable was employed by Hedges, the company is not liable. The statute was enacted for the very purpose of giving employees of the contractor remedy against the principal, and the court has so held. (*Spencer v. Marshall*, 107 Kan. 264, 191 Pac. 468.)" (page 722.)

Still later and at page 723 of the same opinion, after reviewing the facts in more detail than set forth in the syllabus, we said:

". . . The result is, the business of the company was operating for and producing oil, the work of building the derrick was part of its business, and the accident occurred on premises on which the company had undertaken to execute work under its management and control and a part of its business."

*Williams v. Cities Service Gas Co.,* 139 Kan. 166, 30 P. 2d 97, was a case where originally the plaintiff had recovered a compensation award payable in weekly installments from his immediate employer, who had a general contract with the Gas Company, and the employer's insurance carrier. Long before the payments were paid out both the insurance company and the employer became insolvent. Plaintiff, who otherwise would have been left without recourse, commenced an action for and recovered the balance of the award from the Gas Company under the very provisions of the statute now in question. In that case we held:

"The ruling of this court in the case of *Purkable v. Greenland Oil Co.,* 122 Kan. 720, 253 Pac. 219, followed and applied to facts where a gas company engaged in the business of transporting and distributing gas by and through pipe lines, having procured a right of way for the extension and maintenance of its pipe lines, made an oral agreement with a ditch construction company to dig a ditch for the reception of a six-inch gas pipe line and to backfill the ditch after the pipe line had been laid therein, and the ditch-digging company was to furnish all the necessary help and equipment for the digging and filling of the ditch, and the gas company was to have no supervision or control over the employees or work of the ditch-digging company except such general supervision as was necessary to accomplish the result for which the contract was made, and an employee of the ditch-digging company was accidentally injured while digging such a ditch on the gas company right of way, and *held* that the work of digging such ditch was a part of the gas company's business within the meaning of the workmen's compensation law, and the accident occurred on, in and about the premises on which the gas company had undertaken to execute its work within the meaning of the law." (Syl. ¶ 3.)

A careful examination of the foregoing decisions makes it crystal clear that under the facts of the instant case in determining the rights of the parties under the provisions of section 44-503 at the time appellant sustained his injuries questions relating to whether (1) the original contract under which appellant was working was general in nature, (2) his immediate employer or the original contractor were independent contractors engaged in specialized work, (3) the appellee possessed adequate facilities to carry on the work covered by terms of the contract, (4) the extent of control retained over the work or workmen required for performance of its requirements or (5) other matters similar in character are of little consequence. In the final analysis the acid test to be applied is whether the work contracted to be done was a part of appellee's trade or business. If it were, and the rule announced in such decisions is still the law, the parties were subject to the compensation act.

Many decisions construing the provisions of section 44-503 have been handed down since those to which we have just referred. One of the most important is *Bailey v. Mosby Hotel Co.*, supra. In that case a workman's immediate employer had a contract with the defendant to clean and wax the floors of the defendant hotel's coffee shop. The workman was injured on the hotel premises while engaged in the performance of his employer's contract. He brought a common law action against the hotel company for damages. We specifically approved and reaffirmed the rule announced in the Purkable and Williams cases, found the waxing and cleaning of the floors in question was part of the business of operating the hotel and held that he could not maintain a common law action founded on negligence against the company because he had a remedy under the compensation act which was exclusive.

In the Bailey case we discussed and distinguished practically every decision wherein we had given consideration to section 44-503 and no useful purpose would be served by repeating what was said in that opinion with respect to them. It suffices to say we are satisfied with the analysis of decisions and interpretation of the statute there made as well as in our subsequent decisions of *Hoffman v. Cudahy Packing Co.*, 161 Kan. 345, 167 P. 2d 613 and *Swift v. Kelso Feed Co.*, 161 Kan. 383, 168 P. 2d 512, insofar as they deal with the specific point in question, and that we adhere thereto.

With the rule established, since the amended petition alleges the accident in which appellant suffered his injuries occurred on premises on which the appellee had undertaken to execute work, the sole remaining question is whether the work contracted to be done and which was being performed by the contractor (or subcontractor) was a part of the trade or business of the appellee. Heretofore we have pointed out that under the admitted facts appellee was authorized, licensed, and operating as a public utility engaged in the production, sale, and transmission of electric power and that the work contracted for was the erection of a new building in addition to buildings already on the premises and the installation of steam boilers, turbines, generators and other equipment necessary and essential to the production, sale, and transmission of electricity. We note further the petition alleges the explosion occurred just as the appellant had finished cutting a piece of iron for a pipe hanger in a room of appellee's Tecumseh plant and was ready to leave that room and install the hanger in connection with the construction of

the new building and the installation of new equipment therein at such plant. Under the decisions to which we have just referred we have little difficulty in concluding, in fact it is a matter of common knowledge, that steam boilers, turbines, generators and other equipment, as well as a building in which to house them, are a part of the integral equipment necessary to the operation of the business of a public utility which is engaged in the production, transmission, and sale of electricity. New buildings and new equipment whether required for replacement purposes or for increased capacity are incidents essential to the proper maintenance of such business. The result is that the work which the appellee had contracted with the contractor (or subcontractor) to perform was a part of appellee's trade or business. It necessarily follows the trial court ruled correctly in holding that under the facts disclosed by all the pleadings appellant and appellee were subject to the workmen's compensation act and that appellant's sole and exclusive remedy was that provided for by its terms.

In reaching the conclusion just announced we have been mindful of and given weight to what was said in the concluding paragraph of the opinion in *Bailey v. Mosby Hotel Co.*, supra, which is equally applicable to the instant case. It reads:

"The rule is firmly established that the Workmen's Compensation Act is to be liberally construed to effectuate its purposes. (*Murphy v. I. C. U. Const. Co.*, 158 Kan. 541, 548, 148 P. 2d 771; *Chamberlain v. Bowersock Mills & Power Co.*, 150 Kan. 934, 944, 96 P. 2d 684, and cases cited.) If, under the same circumstances upon which he here relies in a common law action the appellant had sought relief for some injury under the workmen's compensation act, he would have been entitled to and would have received the benefit of such liberal construction. It would be ironical to apply a different rule simply because in this instance he chooses another course. It would also be unfair to other workmen whose interests may well be affected in the future." (p. 268).

Appellant insists that our decisions *Lehman v. Grace Oil Co.*, 151 Kan. 145, 98 P. 2d 430; *Bittle v. Shell Petroleum Corp.*, 147 Kan. 227, 75 P. 2d 829; *Truhlicka v. Beech Aircraft Corp.*, 162 Kan. 535, 178 P. 2d 252, and *Waterbury v. Riss & Company*, 169 Kan. 271, 219 P. 2d 673, are contrary to and require a different conclusion than the one just announced. A similar contention was made with respect to the first two decisions last above mentioned in *Bailey v. Mosby Hotel Co.*, supra., and rejected. Therefore we shall not labor those decisions. The Truhlicka case was decided on the proposition that the facts alleged in a petition were so scant that they did not compel

a conclusion the work being performed by the plaintiff was a part of the trade or business of the defendant so as to require an injured workman to make an application for workmen's compensation pursuant to the provisions of section 44-503, hence his petition in a common law action founded on negligence was not demurrable. In the Waterbury case the contention of one of several defendants in the action that it was not liable in damages founded on negligence under the common law for the death of a deceased workman was denied on the ground that the workman's employer, unlike such defendant, was not licensed as a distributor of malt beverages, and was not employed by the defendant to do that type of work by any type of contract. It suffices to say that none of the decisions relied on by appellant goes so far as to hold that a common law action will lie where as here—the work involved is found to be a part of the principal's trade or business and that we do not regard any one of them as sound authority for such contention.

As we leave the point in question it should be stated we have not overlooked arguments advanced by appellant to the effect: First, appellee as principal is not relieved from liability under the common law simply by reason of the fact that the work of the independent contractor may be required to equip the principal's trade or business for operation; second, that under the terms of the contract the parties intended and so agreed that the contractors were independent contractors and appellee would not be liable under provisions of the workmen's compensation act for injuries received by their employees; third, that appellant and appellee were not subject to the workmen's compensation act if the work undertaken by appellee and so contracted was not usually or normally performed in the operation of its trade or business. Assuming, without deciding, the correctness of appellant's first argument as an abstract proposition it has no application to a situation where—as here—the work involved is held to be a part of the principal's trade or business. The answer to its second argument is that parties cannot by their own agreement do away with liabilities imposed by operation of law. See *Phoenix Indemnity Co. v. Barton Torpedo Co.*, 137 Kan. 92, 19 P. 2d 739; *Bailey v. Mosby Hotel Co.*, supra, and *Hoffman v. Cudahy Packing Co.*, supra, touching on the same point. The answer to its third argument has already been indicated. Shortly stated it is that liability under section 44-503 is not limited to work usually or normally performed by the principal but extends to all work which is a part of its trade or business.

The final question raised on appellate review is whether the petition states a cause of action under the doctrine of *res ipsa loquitur*. Inasmuch as the trial court properly sustained the motion for judgment on the pleadings and rendered judgment against the appellant on the ground the parties were subject to the workmen's compensation act and appellant's sole and exclusive remedy was that provided by the terms of such act a decision of that issue would be of no avail to appellant and would serve no useful purpose in this opinion. Therefore it is not necessary to decide it and we shall not do so.

The judgment is affirmed.

PARKER, J. (concurring): After a careful and extended review of our own decisions, as well as those of other jurisdictions, I have become convinced the rule announced in *Purkable v. Greenland Oil Co.*, 122 Kan. 720, 253 Pac. 219, and *Williams v. Cities Service Gas Co.*, 139 Kan. 166, 30 P. 2d 97, is sound and should be followed. For that reason, I concur in the majority opinion as written except in one particular.

I am unable to agree that certain of our decisions on which appellant relies to support his position are in harmony with the views expressed in the two cases to which I have referred or the rule adhered to in the instant case and it seems to me it would clarify the court's position and be of benefit to the bench and bar of this state if we were to frankly say so. Therefore, insofar as they purport to hold the parties therein involved were not subject to identical provisions of the Workmen's Compensation Act then and now (G. S. 1949, 44-503) in force and effect, I would overrule, not attempt to distinguish, our decisions in *Bittle v. Shell Petroleum Corp.*, 147 Kan. 227, 75 P. 2d 829; *Truhlicka v. Beech Aircraft Corp.*, 162 Kan. 535, 178 P. 2d 252, and *Waterbury v. Riss & Company*, 169 Kan. 271, 219 P. 2d 673.

THIELE, PRICE and WERTZ, JJ., join in the foregoing concurring opinion.

SMITH, J. (dissenting): I dissent. *Truhlicka v. Beech Aircraft Corp.*, 162 Kan. 535, 178 P. 2d 252; *Bittle v. Shell Petroleum Corp.*, 147 Kan. 227, 75 P. 2d 829; and *Waterbury v. Riss & Company*, 169 Kan. 271, 219 P. 2d 673, were all written after careful consideration. I do not think they can be distinguished from this case. I do not think they should be overruled. In my opinion they compel a reversal of this judgment.