No. 41,521

REX SHUCK, *Appellee,* v. DALE HENDERSHOT, JOSEPH SINGLETON and DONALD SMITH, *Appellants.*

(347 P. 2d 362)

Opinion filed December 12, 1959.

*L. M. Ascough,* of Topeka, argued the cause, and *C. K. Sayler* and *John A. Bausch,* both of Topeka, and *Maurice A. Wildgen, Glee S. Smith* and *Donald L. Burnett,* all of Larned, were with him on the brief for the appellants, Dale Hendershot and Joseph Singleton.

*Jerry M. Ward,* of Great Bend, argued the cause, and *Tudor W. Hampton* and *Herbert Rohleder,* both of Great Bend, were with him on the brief for the appellant, Donald Smith.

*Morgan Wright,* of Larned, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is a common-law action for damages for personal injury based on alleged negligence of defendants.

The joint demurrer of defendants Hendershot and Singleton, and the separate demurrer of defendant Smith, to the amended petition (hereafter referred to as petition), were overruled. The appeal is from those rulings.

The basic question involved is whether the petition shows on its face that plaintiff's recovery is confined to the provisions of the workmen's compensation act.

Despite our reluctance to encumber an opinion with lengthy quotation of pleadings, it is felt that in order fully to present the various questions and to show the basis of our decision it will be necessary to do so in this case. Material portions of the petition are therefore set out in full:

"Plaintiff, Rex Shuck, for his amended petition against the above named defendants, and for the purpose of complying with and conforming to the rulings of the above captioned Court in striking certain portions of the original petition filed herein, states and alleges as follows:

"1. Plaintiff, whose present post office address is Burdett, Kansas, is a resident of Pawnee County, Kansas;

"2. Defendants, Dale Hendershot and Joseph Singleton, are general partners, and engaged in such capacity in doing business as general construction contractors;

"3. That the defendant, Dale Hendershot, is a resident of Pawnee County, Kansas, and his present post office address is Burdett, Kansas;

"4. That the defendant, Joseph Singleton, is a resident of Pawnee County, Kansas, and his present post office address is Burdett, Kansas;

"5. That the defendant, Donald Smith, is a resident of Pawnee County, Kansas, and his present post office address is Burdett, Kansas;

"6. On or about the 31st day of July, 1957, plaintiff was employed by the defendant, Donald Smith, as a common laborer, and as directed by such employer, plaintiff commenced to work at his employer's farm situated south of Burdett, in Pawnee County, Kansas;

"7. At the date last above shown and at all other times mentioned herein, the defendant, Donald Smith, was regularly engaged in the business of farming and raising livestock, and devoted a substantial portion of his time and labor to no other business or trade;

"8. Defendant, Donald Smith, was not at any time mentioned within this petition, engaged in the business or trade of constructing or repairing buildings, and the construction of a single machinery shed on such farm, as hereinafter alleged, was merely incidental to Donald Smith's regular business of farming and raising livestock.

"9. At the time plaintiff accepted such employment and commenced to work for such employer, the defendants, Hendershot and Singleton, were engaged by Donald Smith as independent construction contractors in constructing and erecting a roundtop farm storage and machinery shed owned by and on premises owned and operated by Donald Smith at such farm.

"10. Acts of Dale Hendershot, as hereinafter alleged, were those performed and committed as the active partner of the general partnership composed of Hendershot and Singleton;

"11. On or about July 31, 1957, plaintiff was instructed by his employer, Donald Smith, to devote his labor to the construction of such roundtop shed under the supervision of Dale Hendershot, and to perform such work as Hendershot should assign to plaintiff as a common laborer.

"12. On or about July 31, 1957, plaintiff commenced to provide his labor to the construction of such roundtop machinery shed and was assigned work to perform by the said Dale Hendershot;

"13. Hendershot and Singleton, such partnership, had employed and were employing several persons on the date last above shown, including Gary Hendershot, a minor son of Dale Hendershot and Maurice Daughenbaugh, who were engaged in such machinery shed construction work;

"14. The partnership, Hendershot and Singleton, through Dale Hendershot, one of such general partners, was in complete charge of and assumed and exercised exclusive control over such construction, having been retained by Donald Smith for that purpose;

"15. Plaintiff was paid by the defendant, Donald Smith, on an hourly wage basis of $1.25 per hour, and received no other compensation for his labor in the construction of such machinery shed;

"16. That sometime between July 31, 1957, and August 8, 1957, the defendant, Dale Hendershot, with the assistance of the common labor of Maurice Daughenbaugh, employee of such partnership, constructed a building scaffold on the premises where such machinery shed was being erected; that Dale

Hendershot performed most of the work in its construction and erection and the attachment of such scaffold to the machinery shed, and in addition, exclusively: (a) selected all lumber therefore from a pile of used lumber salvaged from a frame building shed owned by Donald Smith which had been demolished by a tornado, and which materials had been furnished by the defendant, Donald Smith, for use in and in connection with the construction of such machinery shed; (b) planned and designed the construction of such scaffold; (c) supervised the work of its construction and every detail thereof; (d) selected and furnished all other materials therefor, and (3) furnished such scaffold in a finished state to plaintiff for plaintiff's use in performing work assigned to him by the defendant, Dale Hendershot;

"17. On August 8, 1957, such scaffold while attached and fastened to the entire front or south end of such machinery shed, was mounted by plaintiff in the performance of work assigned to him by the defendant, Dale Hendershot, at Hendershot's direction, and in the course of his employment by the defendant, Donald Smith; in the early afternoon of that day as last above shown, plaintiff and the defendant, Dale Hendershot, were standing on two secured planks constituting the platform of such scaffold just above the top of the entrance to such machinery shed and approximately fourteen (14) feet above the ground level; plaintiff was standing approximately five (5) or six (6) feet east of the defendant, Dale Hendershot; the defendant, Dale Hendershot had just dismounted from a saw-horse resting on top of the scaffolding platform where he had been engaged in nailing siding on the machinery shed; at that time and place, plaintiff looked below and to his left or west, and saw a 'scab' split lengthwise; such 'scab' consisted of a 2″ x 6″ or a 2″ x 8″ block of wood, approximately one foot in length, one of approximately four or five 'scabs' used in lieu of upright supports, which had been nailed to the front siding of such machinery shed; plaintiff immediately called over to the defendant, Dale Hendershot, and stated, in substance: 'We'd better get down and fix that scab'; at that instant the scaffold collapsed hurling plaintiff and the defendant, Dale Hendershot, towards each other, converging on the point where the 'scab,' as had split and become severed, had been formerly· in place, and both the plaintiff and the defendant, Dale Hendershot, fell to the ground, and that such fall inflicted injuries upon the plaintiff as are hereinafter described;

"18. Plaintiff did not construct such scaffold nor any part thereof, nor did he aid in its planning or design nor in the selection of its materials; neither did plaintiff have any prior experience in the construction of scaffolds;

"19. Plaintiff, as a common laborer, neither knew nor, within the extent of his knowledge and experience, should have known that such scaffold was defective and dangerous; nor were the defects of such scaffold and the materials used therein and the danger arising therefrom, within the knowledge of plaintiff nor were such defects and dangerous conditions plainly observable;

"20. That the defendant, Donald Smith, plaintiff's employer, had a non delegable duty of providing the plaintiff with a reasonably safe place to perform plaintiff's work in connection with the construction of such machinery shed, and that such duty existed not only in respect to apparent risks but also in respect to any defects and dangers as were latent;

"21. That the defendants, Hendershot and Singleton, had a duty owing to plaintiff of exercising a degree of care duly required by the nature of the work for which they had been engaged and which they controlled, directed, and supervised; that such duty consisted of providing a scaffolding as would sustain the weight placed thereon under their direction.

"22. Defendants and each of them failed to discharge and breached their duties respectively owing by them to plaintiff as alleged in paragraphs '20' and '21' above;

"23. Defendants, Hendershot and Singleton, were at all times as alleged herein in sole control and possession and maintained the entire and exclusive supervision and superintendence over the instrumentality, to-wit: such scaffold as collapsed, the selection of materials therefor and the design, planning and construction, erection, inspection and testing thereof and especially at the times of the commission of an act or acts of negligence or omission or omissions amounting thereto;

"24. Injuries and damages suffered by plaintiff, as hereinafter alleged, would not have resulted except for some act or acts of negligence or omission or omissions amounting thereto, in the design, planning, construction, erection, testing, or inspection of such scaffold, or the materials selected therefor, and that such injuries and damages resulted directly from such act or acts or omission or omissions, either jointly or severally committed by the defendants herein;

"25. Plaintiff is without the knowledge of the proper techniques, principles of stresses and strains, methods or manner of planning, designing, constructing, testing and inspecting of scaffolds and the selection of materials therefore; plaintiff does not know and therefore does not attempt to allege or describe what specific acts of negligence as may have been the proximate cause of his injuries and damages;"

Paragraphs 26 and 27 relate to the injuries and damage suffered by plaintiff and are followed by the prayer for recovery against all defendants in the amount of $10,728.80.

Defendants Hendershot and Singleton filed a joint demurrer, and defendant Smith a separate demurrer, to the petition. They were identical—the fifth ground thereof being that the petition

". . . shows on its face that any right of recovery that the plaintiff may have as a result of the alleged accidental injury is confined to recovery under the Workmen's Compensation Law of the State of Kansas."

Both demurrers were overruled and all three defendants have appealed.

We first take up and discuss the question presented as it relates to defendants Hendershot and Singleton.

Specifically, they contend that under the allegations of the petition (1) they were engaged in the building trade and therefore compulsorily under the compensation act; (2) they were the special employers of plaintiff, and (3) therefore plaintiff's exclusive remedy as to them was to proceed under the compensation act.

G. S. 1957 Supp. 44-507 specifically provides that "building work" is under the compensation act, and G. S. 1949, 44-508, defines "building work" as being any work in the erection, construction, extension, decoration, alteration, repair or demolition of any building or structural appurtenances.

While the allegations of the petition leave no doubt of the fact, it nevertheless is unnecessary to refer to them on the first two mentioned contentions, for in his brief plaintiff concedes that (1) Hendershot and Singleton were engaged in a trade covered by the act; (2) at the time and place in question they were his special employers, and (3) in performing work incidental to his general agricultural employment he also was concurrently performing work constituting his special employers' trade.

In view of the allegations of the petition, the mentioned sections of the statute, and concessions by plaintiff, it is difficult to follow his contention that as to Hendershot and Singleton the provisions of the compensation act did not provide his exclusive remedy.

Insofar as claimed liability on the part of Hendershot and Singleton is concerned, the case of *Giltner v. Stephens*, 163 Kan. 37, 180 P. 2d 288, relied on by plaintiff, is readily distinguishable from the case before us. In that case the defendant, the owner and operator of a large dairy and stock farm, hired the plaintiff as a carpenter to work on the construction of a dairy barn on the farm. While so engaged the plaintiff was injured and brought a damage action against defendant. Among other things, it was alleged that the operation of a derrick and gin pole (by which plaintiff was injured) was within the control of the defendant. The defendant, a farmer, was exempt from the provisions of the compensation act (G. S. 1935, 44-505—see similar provision in G. S. 1957 Supp. 44-505), but the question of the applicability of the act was injected because of the fact the defendant farmer was engaged in "building" a barn on his farm. It was held that under the allegations of the petition it was clear that the regular trade or business of defendant was the operation of a dairy and stock farm, and that the construction of the barn was merely incidental to his ordinary and regular agricultural pursuits—therefore it could not be said that he was under the compensation act.

It is clear that insofar as defendants Hendershot and Singleton are concerned plaintiff has pleaded himself under the compensation act. It is conceded they were covered by the act and that he was their special employee. It is pleaded that plaintiff was under their

exclusive control and supervision in the performance of the work, and it also is clear that it was their work, as independent contractors, that was being done. For analogies to be drawn reference is made to *Mendel v. Fort Scott Hydraulic Cement Co.*, 147 Kan. 719, 78 P. 2d 868; *Bell v. Hall Lithographing Co.*, 154 Kan. 660, 666, 121 P. 2d 281; *Bright v. Bragg*, 175 Kan. 404, 264 P. 2d 494, and *Judd v. City of Emporia*, 183 Kan. 689, 331 P. 2d 316. As was held in the Bright case, consistency of decisions involving interpretation of the compensation act cannot be maintained by construing the act liberally in favor of compensation where the workman seeks compensation, and strictly against compensation when he seeks damages. On this point see also *Hoffman v. Cudahy Packing Co.*, 161 Kan. 345, 349, 350, 167 P. 2d 613. With respect to these two defendants, plaintiff's remedy was exclusively under the compensation act, and therefore their demurrer to the petition was erroneously overruled.

This brings us, then, to the question whether, under the facts alleged in the petition, a cause of action for damages is stated against defendant Smith—that being one of the grounds of his demurrer. Concededly, being engaged in farming, he was not operating under the compensation act (G. S. 1957 Supp. 44-505), and under the rule of *Giltner v. Stephens*, above, the mere fact that a barn was being constructed on his farm did not bring him within the act.

The proposition, therefore, narrows down to the question whether the petition states a cause of action against him based either on specific acts of negligence—or under the doctrine of *res ipsa loquitur*, as appears to be plaintiff's theory in paragraph 24 and 25 of the petition, quoted above.

A short answer to any contention concerning the theory of *res ipsa loquitur* is that the allegations of the petition negative that defendant Smith was in control of the instrumentality (the scaffold) either at the time it was allegedly negligently constructed or at the time the accidental injury occurred. Paragraph 23 of the petition affirmatively states that *at all times* Hendershot and Singleton were in sole control and possession and maintained the entire and exclusive supervision over the scaffold, and that the selection of materials therefor and the design, planning, construction, erection, inspection and testing thereof, and especially at the times of the commission of an act or acts of negligence or omission, *were exclusively and solely their acts.*

In *Nichols v. Nold,* 174 Kan. 613, 258 P. 2d 317, 38 A. L. R. 2d 887, in discussing the doctrine of *res ipsa loquitur,* it was said:

"The real test is whether defendants were in control at the time of the negligent act or omission which either at that time or later produced the accident." (p. 620.)

See also *Lamb v. Hartford Accident & Indemnity Co.,* 180 Kan. 157, 162 and 163, 300 P. 2d 387.

It is clear the petition does not state a cause of action against defendant Smith under the theory of *res ipsa loquitur*—in fact, the allegations of the petition affirmatively negative application of the doctrine.

Does the petition allege specific acts of negligence on his part? We think not.

The accident in question resulted from the collapse of the scaffold upon which plaintiff and Hendershot were standing, apparently caused by a split piece of board referred to as a "scab" (see paragraph 17 of the petition). It alleges (paragraph 16) that Hendershot performed most of the work in the construction and erection and the attachment of the scaffold to the shed; that he, Hendershot, selected all lumber used in its construction, planned and designed its construction, supervised the work of its construction and every detail thereof, selected and furnished all of the materials therefor, and furnished the scaffold in a finished state to plaintiff for his, plaintiff's, use in performing work assigned to him by Hendershot. The allegations of paragraph 23, in which Hendershot and Singleton are alleged to have had the entire and exclusive supervision over the scaffold and its construction, have already been noted and will not be repeated. It is significant to note that nowhere is defendant Smith charged with any specific act of negligence in connection with the actual and proximate cause of plaintiff's injury, namely, the collapse of the scaffold. From the allegations, if anyone was negligent it was Hendershot, and not Smith.

Careful consideration has been given to all contentions relating to the alleged liability on the part of Smith, but our conclusion is that the petition fails to state a cause of action against him. It follows that his separate demurrer was likewise erroneously overruled.

The judgment of the trial court is therefore reversed with directions to sustain each of the two demurrers to the petition.

WERTZ and ROBB, JJ., dissent from paragraph 2(c) of the syllabus and the corresponding portion of the opinion.